DRAKE, J.
| ?The judgment debtors appeal the amount of .attorney’s fees awarded following the confirmation of a default judgment in an action seeking recovery of money owed under two promissory notes. For the following reasons, we vacate the judgment in part and remand the attorney’s *822 fees issue to the trial court, with instructions.

FACTS AND PROCEDURAL BACKGROUND

NOGG, L.L.C. (“NOGG”) is a Washington corporation, with its principal place of business in Tacoma, Washington. Edward L. Haggarty is the registered agent of NOGG. Whitney Bank (‘Whitney”), the plaintiff-appellee, is the holder in due course of two promissory notes executed by the defendants-appellants, NOGG and Mr. Haggarty, in favor of Whitney, as lender, in the principal amounts of $125,000.00 and $62,584.82.[1] According to Whitney, despite amicable demand, the defendants failed to pay any installment on the notes since April 12, 2013. Subsequently, Whitney Bank sued to collect:
[Note] 1: The principal sum of $124,471.42, plus interest accrued through April 12, 2013 in the amount of $239.89, plus interest from April 13, 2013 until paid at the rate of 5% per annum (per diem $17.2876972); ... [and]
[Note] 2: The principal sum of $38,140.75, plus interest accrued through April 12, 2013 in the amount of $295.76, plus interest from April 13, 2013 until paid at the rate of 4.75% per annum (per diem $5.0324534)....
Whitney also sought the contractual attorney's fees of 25% of the amount of the unpaid debt on both notes.
ULater, Whitney moved for a preliminary default, which the trial court granted. Whitney then moved for confirmation of the preliminary default, which the trial court confirmed, awarding attorney’s fees in the amount of 25% of the amount of the unpaid debt on both notes. The defendants filed a motion for new trial, which the trial court denied.
The defendants filed a devolutive appeal, and in their sole assignment of error, the defendants contend that the trial court’s award of attorney’s fees of 25% of the principal balances of the two promissory notes on a judgment of default, which amounts to more than $40,000.00, is excessive, not supported by the record, and an abuse of the trial court’s discretion.

APPLICABLE LAW

Standard of Review

The appellate jurisdiction of courts of appeal encompasses both law and facts. La. Const, art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that was manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882, n. 2 (La.1993). When the court of appeal does find that a reversible legal error or manifest error of material fact was made in the trial court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Arias v. Stolthaven New Orleans, L.L.C., 2008-1111 (La.5/5/09), 9 So.3d 815, 818.
Those general appellate review parameters narrow when a default judgment is before a court of appeal, in which *823 cáse the review is restricted to a determination of the sufficiency of the evidence offered in support of the .judgment. See Arias, 9 So.3d at 818. Further, that determination is a factual one governed by the manifest error, standard of review. See Arias, 9 So.3d at 818. That standard means the court conducting the review “must do more than simply review the 1 ¿record for some evidence which supports or controverts the trial court’s finding. The reviewing court must, review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.” Stobart, 617 So.2d at 882.

Default Judgment

Louisiana Code of Civil Procedure articles 1701 through 1704 govern default judgments. In an ordinary proceeding, such as the present case, a defendant generally must file an answer within fifteen days after receiving serried of citation. La. C.C.P. art. 1001. If the defendant chooses to first file an exception, the law extends the deadline for filing an answer until after the exception is resolved. See La. C.C.P. art. 1001. When the defendant fails to file an answer within the time prescribed by law, the plaintiff may request that the court enter a judgment by default. La. C.C.P. art.' 1701(A). As the Louisiana Supreme Court noted in Añas, when a defendant has failed to answer in a timely fashion, the procedure for obtaining a default judgment is a straightforward, two-step process. Añas, 9 So.3d at 819. Step one, the default judgment, or “preliminary default,” may be sought by oral motion in open court or written motion, and consists of a minute entry. Añas, 9 So.3d at 819. Step two, confirming the default, is also uncomplicated. The supreme court summarized the process in Añas:
[T]he judgment of default may be confirmed after two days, exclusive of holidays, from the entry of the judgment of default, that is, on the -third “judicial day” after the lapse of two days, which are not judicial holidays, from the entry of the preliminary default.
Confirmation of a default judgment is similar to a trial and requires, with' admissible evidence, “proof of the demand sufficient to establish a prima facie case.” The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the. defendant.
Arias, 9 So.3d at 819-20 (citations and footnote omitted).
| Attorney’s Fees
It is well recognized that the Louisiana Supreme Court has full and exclusive authority to regulate all aspects of the practice of law, including the client-attorney relationship. E.g., Chittenden v. State Farm Mut. Auto. Ins. Co., 2000-0414 (La.5/15/01), 788 So.2d 1140, 1148. Further, “[c]ourts are vested with the responsibility of both monitoring and analyzing the attorney-client relationship, even when it is based on a written contract between the parties.” In re Interdiction of DeMarco, 2009-1791 (La.App. 1 Cir. 4/7/10), 38 So.3d 417, 427. However, that responsibility must be carried out with restraint, especially when the parties have signed a contract that sets the terms of the attorney-client relationship. DeMarco, 38 So.3d at 427. Part of any attorney-client relationship is the fee the attorney may charge the client for professional services. Any court-ordered reduction in an attorney’s fee must rest upon a factual finding that the excessive fee amount was never earned. DeMarco, 38 So.3d at 427. Absent a showing that the fee charged was clearly excessive, a contractual relationship between an attorney and client should not *824 be altered. DeMarco, 38 So.3d at 427. Specifically, unless the attorney-client contract produces an excessive, unearned, or incommensurate fee when measured by the factors in Rule 1.5(a) of the Louisiana State Bar Association Rules of Professional Conduct (“RPC”), .the fee charged must be considered reasonable and enforceable. DeMarco, 38 So.3d at 427. RPC Rule 1.5(a) provides:
A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
|fi(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing thé services; and
(8) whether the fee is fixed or contingent. .
Further, an appellate court must use the “clearly wrong” or “manifest ly erroneous” standard of review in considering a trial court’s factual findings -relating to the reasonableness of a contractual attorney fee. DeMarco, 38 So.3d at 428. Factors to be considered in determining the reasonableness of attorney’s fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. See RPC Rule 1.5(a); State, Dept. of Transp. and Dev. v. Williamson, 597 So.2d 439, 442 (La.1992); Anglin v. Anglin, 2009-0844 (La.App. 1 Cir. 12/16/09), 30 So.3d 746, 752.
The “abuse of discretion” standard of review would apply to appellate review of an amount awarded by a trial court as a reasonable fee after a finding that a contractual fee was clearly excessive. DeMarco, 38 So.3d at 428. The trial court has much discretion in fixing an award of attorney’s fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. Regions Bank v. Automax USA, L.L.C., 2002-1755 (La.App. 1 Cir. 6/27/03), 858 So.2d 593, 595, writ denied, 2003-2131 (La.11/7/03), 857 So.2d 503.

DISCUSSION

The defendants’ sole assignment of error is that the trial court awarded an excessive amount of attorney’s fees not supported by the record. The .record on appeal reveals that the defendants’ promissory notes to Whitney Bank contain a 25% attorney’s fees provision. However, as already noted, the courts have authority to review any attorney’s fee. DeMarco, 38 So.3d at 427. Here, the record lacks the factual information necessary to perform our role in that review process.
As previously stated, whether a contract produces an attorney’s fee that is excessive is determined by applying the factors in *825 RPC Rule 1.5(a). DeMarco, 38 So.3d at 427-28. Here, the record on appeal does not contain reasons for judgment. Such oral or written reasons could have illuminated which Rule 1.5(a) factors the trial court saw as important in this case, the facts to which the court applied those.factors, and the weight the trial court assigned the factors. Further, the record on appeal provides us with a paucity of facts to which the Rule 1.5(a) factors would be applied, such as the amount of, time the lender’s legal counsel expended in this matter, the likelihood of the representation precluded other legal work, and whether the fee was contingent or fixed. We note that this “lack of factual information” is likely due to the. nature of the procedure in the trial court, i e., the confirmation of a default judgment in an action seeking recovery of money owed under two promissory notes.
While Whitney’s appellate brief contains many representations about facts to which Whitney would have us apply the Rule 1.5(a) factors, we may not do so. . It is impossible for us to consider those representations because “appellate briefs are not part of the record, and an appellate court has no authority to consider on appeal Isfacts referred to in' argument of counsel, in such briefs, ... [that] are outside the record.” Niemann v. Crosby Development Co., 2011-1337 (La.App. 1 Cir. 5/3/12), 92 So.3d 1039, 1045. The record here is bare bones: a petition with promissory notes attached, • motions and orders for preliminary and confirmed defaults, a motion and denial of a new trial, and a motion and order for appeal. Thus, the record here supplies insufficient facts to assess the Rule 1.5(a) factors. We note that our jurisprudence holds that the inadequacy of the-record is imputable to the appellant, in this case, the defendants. See, e.g., Niemann, 92 So.3d at 1044.
Thus, taken together, the absence of factual findings of reasonableness of the contractual* attorney’s fees by the trial court, the absence of reasons for judgment, and the relative sparseness of this particular record on appeal, all leave this court with an inadequate factual basis upon which to assess the trial court’s award of the attorney’s fees. -
Louisiana Code of Civil Procedure article 2164 provides that an “appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.” Under that Article, the Louisiana Supreme Court has explained that an appellate court may remand a matter to the trial court to permit that court to take additional evidence .where necessary to reach a just decision and prevent a miscarriage of justice. E.g., Alex v. Rayne Concrete Service, 2005-1457 (La.1/26/07), 951 So.2d 138, 155. Procedurally, remand is appropriate here because the record lacks the evidence that would állow us to resolve whether there is merit to the defendants’ assignment alleging the trial court erred in the amount of the award of attorney’s fees. Therefore, we affirm the trial court’s award of attorney’s fees to Whitney; we vacate the amount of the award of attorney’s fees; and we remand this matter to the trial court for the taking of evidence on the issue of the appropriate amount of attorney’s fees, for the issuing of written reasons' for judgment on that issue, and for the rendering of a new judgment on that issue.

UDECREE '

Therefore, we affirm, in part, and vacate, in part, the August 26,2014 judgment of the trial court, as indicated herein. We remand this matter to the trial court for the taking of evidence on the issue of the appropriate amount of attorney’s fees, for the issuing of written reasons for judg *826 ment on that issue, and for the rendering of a new judgment on that issue. All costs of this appeal are assessed equally between the parties.
JUDGMENT AFFIRMED IN PART, VACATED IN PART; REMANDED, WITH INSTRUCTIONS.
J.T. PETTIGREW, J., concurs without written reasons.

. To secure the indebtedness, NOGG executed a security agreement, granting a security interest in favor of Whitney on all receivables, general intangibles, and inventory. As additional security, Mr. Haggarty granted a commercial guaranty in favor of Whitney, which guaranteed the indebtedness of the corporation. We note that the original holder of the security agreement and guaranty agreement was Hancock Bank of Louisiana. By name change effective June 4, 2011, Hancock Bank changed its name, after merging with Whitney National Bank, to Whitney Bank. As such, Whitney is the proper holder of these promissory notes.